CITY OF HARTFORD ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(12596)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and COVELLO, Js.

Argued October 2—decision released November 25, 1986

*Lisa Silvestri,* assistant corporation counsel, with whom, on the brief, was *Richard H. Goldstein,* corporation counsel, for the appellants (plaintiffs).

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

PETERS, C. J. The dispositive issue on this appeal is whether the plaintiffs, the city of Hartford and its police department, have a statutory right to refuse to disclose

records of a police department internal investigation into the defendant Gilbert L. Clarke's complaints of police misconduct. Clarke requested from the police department, but did not receive, copies of records relevant to the investigation in question. Through his attorney, the defendant Irving H. Rosenthal, Clarke complained to the Freedom of Information Commission (the commission), seeking disclosure of the records under General Statutes § 1-21i (b). After a hearing, the commission ordered the plaintiffs to furnish copies of the records to Clarke. Pursuant to General Statutes § 1-21i (d), the plaintiffs appealed the commission's order to the superior court. That court, *Barry, J.,* rendered a judgment dismissing the appeal. We find no error in the plaintiffs' appeal of that judgment.

The parties do not dispute the underlying facts. On June 12, 1981, Hartford police arrested and detained the defendant Clarke. Clarke subsequently filed complaints with the Hartford police department's internal affairs division alleging that he had been subjected to police brutality and deprived of his civil rights by nine officers involved in his arrest, processing and detention. On November 3, 1981, Hartford Police Chief George W. Sicaras notified Clarke by letter that the police department's internal affairs division had investigated his complaint. Sicaras' letter informed Clarke that eight of the nine officers had been exonerated of all charges, and that the ninth officer had been referred to the department advocate for further investigation.

On November 14, the defendant Rosenthal wrote to Chief Sicaras, on Clarke's behalf, seeking: copies of written reports of the internal affairs investigation; the review of the investigation by the involved officers' commanding officers and the police department's investigative review board; and the referral of the officer who had not been exonerated. On December 2, 1981, having received no response to his letter, Rosenthal

filed a complaint with the Freedom of Information Commission seeking to compel production of the requested material. A hearing was held in February, 1982, after which, in accordance with commission procedures, both parties had the opportunity to submit written briefs. In July, 1982, the commission ordered the plaintiffs to furnish the requested documents. The Superior Court thereafter dismissed the plaintiffs' appeal of the commission's order in September, 1984.

On appeal to this court, the plaintiffs claim that the lower court erred in determining that: (1) General Statutes §§ 31-128a (2) and 31-128f, which limit an employer's right to disclose information in personnel files, do not apply to municipal employees; and (2) the investigative records are not exempt from public disclosure under General Statutes § 1-19 (b) (2), which exempts certain personnel files from the ambit of the Freedom of Information Act, General Statutes § 1-15 et seq. The plaintiffs also claim that this court must automatically sustain their appeal because the commission failed to hear and render a decision upon the defendant Clarke's complaint within the time limits imposed by General Statutes § 1-21i (b).[1] We consider this latter claim first.

---

[1] "[General Statutes (Rev. to 1985)] Sec. 1-21i. DENIAL OF ACCESS TO PUBLIC RECORD OR MEETINGS. APPEALS. NOTICE. ORDERS. CIVIL PENALTY. SERVICE OF PROCESS UPON COMMISSION. FRIVOLOUS APPEALS. . . . (b) Any person denied the right to inspect or copy records under section 1-19 or wrongfully denied the right to attend any meeting of a public agency or denied any other right conferred by sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, may appeal therefrom to the freedom of information commission, by filing a notice of appeal with said commission. A notice of appeal shall be filed within thirty days after such denial, except in the case of an unnoticed or secret meeting, in which case the appeal shall be filed within thirty days after the person filing the appeal receives notice in fact that such meeting was held. For purposes of this subsection, such notice of appeal shall be deemed to be filed on the date it is received by said commission or on the date it is postmarked, if received more than thirty days after the date of the denial from which such appeal is taken. Upon receipt of such notice, the commission shall serve upon all parties, by certified or registered mail, a copy of such notice together with any other

## I

The plaintiffs' jurisdictional claim arises out of the juxtaposition of recent case law and even more recent legislation concerning the procedural constraints on administrative proceedings before the Freedom of Information Commission. In *Board of Police Commissioners* v. *Freedom of Information Commission,* 199 Conn. 451, 452–53, 507 A.2d 1385 (1986), and *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 503–506, 503 A.2d 1161 (1986), we held that the time constraints imposed by § 1-21i (b) on commission action are mandatory. Consequently, we concluded that the commission's failure to hear and decide cases within those time limits nullified any subsequent action that the commission had taken. Following these decisions, in May, 1986, the Connecticut General Assembly enacted Public Acts 1986, No. 86-408 (hereinafter No. 86-408), which repealed § 1-21i (b). Section 2 (a) of No. 86-408 validated those actions of the commission that did not comply with the time limits of § 1-21i (b) but had not been fully adjudicated by the new act's effective date.[2] The plaintiffs do not dispute

notice or order of such commission. Said commission shall, within twenty days after receipt of the notice of appeal, hear such appeal after due notice to the parties and shall decide the appeal within thirty days after such hearing, by confirming the action of the agency or ordering the agency to comply forthwith with such relief as the commission, in its sound discretion, believes appropriate to rectify the denial of any right conferred by said sections. . . ."

[2] Public Acts 1986, No. 86-408, § 2 (a), provides: "Any action of the freedom of information commission, established under section 1-21j of the general statutes, during the period commencing on October 1, 1975, and ending on the effective date of this act, in which the time requirements prescribed in subsection (b) of section 1-21i of the general statutes, revision of 1958, revised to January 1, 1985, were not met, and which has not been fully adjudicated, is validated, notwithstanding the failure of said commission to act within the prescribed periods, provided no appeal pending before the commission on the effective date of this act shall be so validated unless the requirements of subsection (b) of this section are met."

that the legislature intended No. 86-408, § 2 (a), to operate retroactively, nor that the commission's action in this case is covered by the language of the statute. Rather, they urge this court to hold that No. 86-408, § 2 (a), is void as an impermissible abrogation of their vested rights.[3]

The legislature has the power to cure, by retroactive enactment, a party's failure to comply with a procedural statutory requirement, provided that two conditions have been met. First, the legislative enactment must address a procedural requirement that the legislature had the right to alter prospectively. Second, the enactment's retroactive application must not operate in a manner that would unjustly abrogate vested rights. *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 572, 440 A.2d 220 (1981); *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board,* 165 Conn. 448, 454, 334 A.2d 909 (1973); *Sanger* v. *Bridgeport,* 124 Conn. 183, 186–87, 198 A. 746 (1938); 2 J. Sutherland, Statutory Construction (4th Ed. 1986) § 41.05.

The record in this case discloses no evidence that any vested rights of the plaintiffs were impaired by the enactment of No. 86-408, § 2 (a). We are not confronted with a situation in which, but for the retroactive legislation, the defendants would be irrevocably barred from obtaining the relief that they seek. The case thus is distinguishable from *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 (1974), on which the plaintiffs rely. In *Hillier,* the legislature, via special act, validated the plaintiff's failure to comply with a statutory time limi-

---

[3] While the plaintiffs do not expressly refer to a constitutional foundation for the argument that Public Acts 1986, No. 86-408, is invalid, their reference to *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 440 A.2d 220 (1981), and *Montgomery* v. *Branford,* 107 Conn. 697, 142 A. 574 (1928), suggest that the plaintiffs invoke state and federal constitutional authority to vindicate their claim.

tation for furnishing notice of injury to the defendant before commencing suit. The very existence of the plaintiff's right of action depended on her compliance with the notice provision. Furthermore, her late filing of notice prejudiced the defendant's ability to investigate the circumstances of the alleged injury and prepare a defense. Id., 107. Accordingly, we held that the retroactive legislation abrogated the defendant's vested rights, in violation of article first, § 1, of the Connecticut constitution and § 1 of the fourteenth amendment to the United States constitution.[4] Id., 109–10. In the case before us, unlike *Hillier,* the act of the legislature merely excuses the commission's failure to comply with procedural requirements that do not directly affect the substantive rights of the parties. Were we to adopt the plaintiffs' position and sustain the appeal, the defendant Clarke would be free to file a second complaint with the commission and, assuming the commission again found in his favor, would be entitled to the same relief as he had been granted previously. Under these circumstances, we conclude that No. 86-408, § 2 (a) neither abrogates the plaintiffs' vested rights, nor deprives them of a legally cognizable property interest.[5]

[4] Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." See also article first, § 8, of the Connecticut constitution, which prohibits the deprivation of property "without due process of law."

Section 1 of the fourteenth amendment to the United States constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

[5] Our rejection of this argument is not an endorsement of the commission's claim, raised in its supplemental brief and at oral argument, that Public Acts 1986, No. 86-408, § 2 (a), merely clarifies the legislative intent underlying former General Statutes § 1-21i (b). In *Board of Police Commis-*

## II

We turn now to the plaintiffs' claim that the documents included in the commission's disclosure order are absolutely privileged from disclosure by General Statutes § 31-128f,[6] a key provision of the Personnel Files Act, General Statutes § 31-128a et seq. With limited exceptions not applicable here, General Statutes § 31-128f prohibits an "employer" from disclosing "individually identifiable information contained in the personnel file or medical records of any employee . . . ." "Employer" is defined in General Statutes § 31-128a (2) to include "an individual, corporation,

---

*sioners* v. *Freedom of Information Commission,* 199 Conn. 451, 507 A.2d 1385 (1986), and *Zoning Board of Appeals* v. *Freedom of Information Commission,* 198 Conn. 498, 503 A.2d 1161 (1986), we made clear that the legislature intended the time limits of § 1-21i (b) to be mandatory. We therefore cannot endorse the argument that the subsequent retroactive modification of the statute acted to "clarify" a legislative intent already unequivocally established.

[6] "[General Statutes] Sec. 31-128f. EMPLOYEE'S CONSENT REQUIRED FOR DISCLOSURE. No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except where the information is limited to the verification of dates of employment and the employee's title or position and wage or salary or where the disclosure is made: (1) To a third party that maintains or prepares employment records or performs other employment-related services for the employer; (2) pursuant to a lawfully issued administrative summons or judicial order, including a search warrant or subpoena, or in response to a government audit or the investigation or defense of personnel-related complaints against the employer; (3) pursuant to a request by a law enforcement agency for an employee's home address and dates of his attendance at work; (4) in response to an apparent medical emergency or to apprise the employee's physician of a medical condition of which the employee may not be aware; (5) to comply with federal, state or local laws or regulations; or (6) where the information is disseminated pursuant to the terms of a collective bargaining agreement. Where such authorization involves medical records the employer shall inform the concerned employee of his or his physician's right of inspection and correction, his right to withhold authorization, and the effect of any withholding of such authorization upon such employee."

partnership or unincorporated association." The defend-
ants do not contest the plaintiffs' characterization of
the documents in question as personnel files, but rather
claim that the plaintiffs are not "employers" within the
scope of § 31-128f. We agree.

The plaintiffs contend that they fall within the defi-
nition of "employer" in § 31-128a (2) because that defi-
nition includes corporations, and the city of Hartford
is a municipal corporation. Citing examples of other
state statutes dealing with corporations, in which the
legislature has specifically defined the types of corpo-
rations covered,[7] the plaintiffs argue that if the legis-
lature had intended to exclude municipal corporations
from the ambit of § 31-128a (2), it would have done so
expressly. We find this argument unpersuasive.

We note that, if § 31-128a (2) were construed to
include municipal corporations within its scope, Gen-
eral Statutes § 31-128f would overlap and conflict with
General Statutes § 1-19,[8] the centerpiece of the Free-

---

[7] Among other statutes, the plaintiffs cite General Statutes § 33-421 (f),
which defines "corporation" or "domestic corporation" for purposes of the
Nonstock Corporations Act, General Statutes § 33-419 et seq. Section
33-421 (f)'s definition specifically excludes "towns, cities, boroughs or any
municipal corporation or department thereof."

[8] "[General Statutes] Sec. 1-19. ACCESS TO PUBLIC RECORDS. EXEMPT REC-
ORDS. (a) Except as otherwise provided by any federal law or state stat-
ute, all records maintained or kept on file by any public agency, whether
or not such records are required by any law or by any rule or regulation,
shall be public records and every person shall have the right to inspect such
records promptly during regular office or business hours or to receive a
copy of such records in accordance with the provisions of section 1-15. Any
agency rule or regulation or part thereof, that conflicts with the provisions
of this subsection or diminishes or curtails in any way the rights granted
by this subsection shall be void. Each such agency shall keep and maintain
all public records in its custody at its regular office or place of business
in an accessible place and, if there is no such office or place of business,
the public records pertaining to such agency shall be kept in the office of
the clerk of the political subdivision in which such public agency is located
or of the secretary of the state, as the case may be. Any certified record
hereunder attested as a true copy by the clerk, chief or deputy of such agency

dom of Information Act, which makes disclosure of public records the statutory norm.[9] While § 1-19 (a) does provide an exception to disclosure where "otherwise provided by . . . state statute," General Statutes § 1-19 (b) (2) provides a separate exemption for "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." Because the enactment of § 1-19 predates the enactment of the Personnel Files Act, § 31-128a et seq.,[10] we must presume that the legislature enacted the later statutory provision with the earlier in mind, and thus, that §§ 1-19 and 31-128a et seq. should be construed harmoniously. *State* v. *Murtha,* 179 Conn. 463, 466, 427 A.2d 807 (1980); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 74, 230 A.2d 36 (1967); 2A J. Sutherland, supra, § 51.02. Such a harmonious construction counsels that municipal corporations should be deemed to have been excluded from the definition of "employer" in § 31-128 (a) (2).

Our construction of the Personnel Files Act finds support in the act's legislative history. The act originated in 1979 as House Bill 6938, became Public Acts 1979, No. 79-264, after its passage, and was codified as § 31-128a et seq. The original version of House Bill 6938 included "political subdivision" in the definition of "employer," but the House of Representatives amended the bill before its passage to delete the reference to "political subdivision." 22 H.R. Proc., Pt. 15, 1979

---

or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein. Each such agency shall make, keep and maintain a record of the proceedings of its meetings."

[9] The plaintiffs do not dispute that the records in question are "maintained or kept on file by [a] public agency"; General Statutes § 1-19 (a); and thus subject to the act's provisions.

[10] The relevant portions of General Statutes § 1-19 were originally enacted in 1967 as Public Acts 1967, No. 723. General Statutes § 31-128a et seq. were enacted in 1979 as part of Public Acts 1979, No. 79-264.

Sess., p. 5059. Representative Richard J. Balducci, the proponent of this amendment, explained that its purpose was to avoid confusion and conflict with the pre-existing provisions of the Freedom of Information Act. Id., p. 5057. The remaining House discussion of the bill focused on the effect of the anti-disclosure provisions on private employers and employees. Id., pp. 5058–81. Accordingly, we hold that the plaintiffs cannot invoke § 31-128f as a limitation on the categories of public records that fall within the governance of the Freedom of Information Act.

### III

The plaintiffs' final argument is that the police department investigative records are protected from disclosure by General Statutes § 1-19 (b) (2), which, as noted above, exempts from the coverage of the Freedom of Information Act "personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." Our construction of this provision must be guided by the Freedom of Information Act's overarching policy favoring disclosure of public records. *Maher* v. *Freedom of Information Commission,* 192 Conn. 310, 315, 472 A.2d 321 (1984). As an exception to that policy, § 1-19 (b) (2) must be narrowly construed. Id.; *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d 1209 (1984). The plaintiffs have the burden of proving the exception's applicability. *Maher* v. *Freedom of Information Commission,* supra; *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 329, 435 A.2d 353 (1980).

The plaintiffs must meet a twofold burden of proof to establish the applicability of the § 1-19 (b) (2) exclusion. First, they must establish that the files in question are within the categories of files protected by the

exemption, that is, personnel, medical or "similar" files.[11] Second, they must show that disclosure of the records "would constitute an invasion of personal privacy."

The plaintiffs must satisfy this dual burden whether the investigative records are characterized as "personnel" or "similar" files. It might be argued, exploiting the grammatical ambiguity of the statute, that only "similar" files, the category of files immediately precedent to the restrictive clause "disclosure of which would constitute an invasion of personal privacy," is modified by that clause. Such a reading, however, cannot be supported.[12] Interpreting nearly identical language in the Federal Freedom of Information Act, 5 U.S.C. § 552 (b) (6),[13] the United States Supreme Court has held that the "invasion of privacy" restriction modifies personnel files as well as similar files. *Department of Air Force* v. *Rose,* 425 U.S. 352, 370–75, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976). In addition to this interpretation by the nation's highest court, our construction of § 1-19 (b) (2) is governed by § 1-19's policy of promoting disclosure of public records. *Maher* v. *Freedom of Information Commission,* supra; *Wilson* v. *Freedom of Information Commission,* supra. It is "the

---

[11] We interpret the term "similar files" to encompass only files similar in nature to personnel or medical files. This interpretation is consistent with our policy of narrowly construing exceptions to the Freedom of Information Act. *Board of Police Commissioners* v. *Freedom of Information Commission,* 192 Conn. 183, 188, 470 A.2d 1209 (1984). We also recognize that when a reference to a general category follows an enumeration of specific categories, the general category is construed to embrace only objects similar to those included in the specific categories. *Anderson* v. *Ludgin,* 175 Conn. 545, 553, 400 A.2d 712 (1978); 2A J. Sutherland, Statutory Construction (4th Ed. 1986) § 47.18.

[12] The plaintiffs' counsel expressly disavowed such an interpretation at oral argument.

[13] Title 5 of the United States Code, § 552 (b) (6), provides: "(b) This section does not apply to matters that are . . . (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

cardinal rule that the general purpose, intent or purport of the whole act shall control" the interpretation of subsidiary provisions. 2A J. Sutherland, supra, § 46.05, p. 91; accord *Shelby Mutual Ins. Co. v. Della Ghelfa,* 200 Conn. 630, 637–38, 513 A.2d 52 (1986); *Kerin v. Goldfarb,* 160 Conn. 463, 465–66, 280 A.2d 143 (1971). We therefore conclude that the final, restrictive clause of § 1-19 (b) (2) modifies all the categories of records that precede that clause.[14] Accordingly, the plaintiffs cannot avoid disclosure of their investigative records unless they can prove both that their records constitute personnel or "similar" files, and that such disclosure would constitute an invasion of personal privacy.

We conclude that the plaintiffs have met the first part of the § 1-19 (b) (2) exemption by establishing that the records in question are personnel or "similar" files. While the commission's hearing officer found to the contrary, the memorandum of decison of the trial court implicitly accepted the plaintiffs' characterization of the records. The defendants do not contest this aspect of the trial court's findings on appeal, and therefore, they are deemed to have abandoned any claim of error relating to this issue. See Practice Book § 3012 (a) (now § 4013 [a]);[15] *Lynch v. Davis,* 181 Conn. 434, 437, 435 A.2d 977 (1980).

---

[14] Our interpretation of General Statutes § 1-19 (b) (2) is consistent with *State v. Januszewski,* 182 Conn. 142, 170–72, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). In *Januszewski* we held, with reference to § 1-19 (b) (2), that the propriety of disclosing information in a personnel file is governed by balancing the need for disclosure "against the public policy in favor of the confidentiality of private and personal information." Id., 172. Our language in *Januszewski* implicitly rejects the argument that § 1-19 (b) (2) provides an absolute exemption for all personnel records.

[15] "[Practice Book] Sec. 3012. [FILING APPEAL]—PAPERS TO BE FILED BY APPELLANT AND APPELLEE ON ISSUES, RECORD AND TRANSCRIPT

"The appellant shall send, as set forth in Sec. 3013, to the chief clerk of the supreme court at the same time the appellant sends him a copy of the appeal:

The second part of the § 1-19 (b) (2) exemption requires the plaintiffs to show that disclosure of the records "would constitute an invasion of personal privacy." The plaintiffs have utterly failed to make such a showing. At the initial hearing before the commission, the plaintiffs alleged in broad, conclusory terms that the records were exempt from disclosure because they related to investigations that *might* lead to discipline, suspension or termination of the police officers involved. At no time did the plaintiffs attempt to describe even generally the contents of the specific records in question.[16] In the absence of such evidence, we cannot discern whether any legally cognizable privacy interest is compromised by the commission's disclosure order. The commission is not obliged to "accept an

"(a) A preliminary statement of the issues intended for presentation on appeal. If the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial, or if he wishes to claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on the appeal, he may file a preliminary statement of issues within fourteen days from the filing of the appeal."

[16] In *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 340–41, 435 A.2d 353 (1980), we suggested several methods by which a party claiming an exemption to the Freedom of Information Act could present evidence to support the claim without revealing the records themselves, such as by giving testimony as to the content and use of the records, or furnishing the commission with affidavits regarding the same. We noted, however, that "[a]ny such testimony or affidavits must not be couched in conclusory language or generalized allegations . . . but should be sufficiently detailed, without compromising the asserted right to confidentiality, to present the commission with an informed factual basis for its decision . . . ." Id., 341. Had the plaintiffs here chosen to present evidence in support of their claim that disclosure of the relevant records would constitute an invasion of personal privacy, we assume that the commission would have made appropriate procedural accommodations to protect the confidentiality of the documents, including, if necessary, waiving its evidentiary rules to conduct an in camera inspection of the records. See Regs., Conn. State Agencies § 1-21j-35 (a) (no in camera inspections); Regs., Conn. State Agencies § 1-21j-13 (waiver of commission rules permissible "[w]here good cause appears").

agency's generalized and unsupported allegations relating to documents claimed to be exempt from disclosure." *Wilson* v. *Freedom of Information Commission,* supra, 340. On the contrary, as the trial court aptly observed, the commission might reasonably have presumed that the public has a legitimate interest in the integrity of local police departments and in disclosure of how such departments investigate and evaluate citizen complaints of police misconduct.

The plaintiffs have failed to establish on the record that they were entitled to the exemption to disclosure provided by General Statutes § 1-19 (b) (2). Accordingly, we hold that the commission acted properly in denying the plaintiffs the protection of § 1-19 (b) (2) and in ordering them to turn over the police department investigative records to the defendants Rosenthal and Clarke.

There is no error.

In this opinion the other justices concurred.