[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed from a decision of the Freedom of Information Commission (FOIC) ordering the personnel department of the city of Hartford to provide access to certain information contained in the job application forms of those employees named in a request to the department made by the complainants, CT Page 10757 Steve Kemper, a journalist, and his employers, Northeast Magazine and the Hartford Courant. The request was made pursuant to General Statutes 1-19 (a) of the Freedom of Information Act (FOIA). The commission's order required the department to redact from the records certain items specified.
The dispositive issue raised by the appeal of the city and those city employees who objected to the disclosure of their job application forms pursuant to General Statutes 1-20 (a) is whether the commission could reasonably have failed to conclude from the evidence that disclosure of the requested information "would constitute an invasion of personal privacy."
 I
The commission does not contest the aggrieved status of the plaintiffs or their corresponding right to bring this appeal. General Statutes 4-183 (a). The plaintiffs do not dispute any of the subordinate facts found by the commission as stated in paragraphs 1-14
nor the facts and conclusions in paragraphs 18-21 relating to redaction of some items. They also do not contest paragraphs 16-17, which merely state the plaintiffs' claims. The plaintiffs maintain, nevertheless, that the commission's conclusions in paragraphs 15 and 22-23 relating to the issue of invasion of privacy were unreasonable.
General Statutes 1-19 (b) modifies the broad declaration of 1-19 (a) that "all records maintained or kept on file by any public agency . . . shall be public records [that] every person shall have the right to inspect . . ." by providing that "[n]othing" in that section shall be construed to require disclosure of "(2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy." In Hartford v. Freedom of Information Commission, 201 Conn. 421, 431 (1981), the court stated that, as an exception to the general policy of unlimited disclosure of public records established by 1-19 (a), "1-19 (b) (2) must be narrowly construed" and that those opposing disclosure "have the burden of proving the exception's applicability." The CT Page 10758 court also concluded in that case that the relative clause, "the disclosure of which would constitute an invasion of personal privacy," applied to each of the three categories specified, "personnel or medical files and similar files." The plaintiffs, therefore, gain little from the conclusion of the commission that the job application forms involved in this case are properly regarded as part of the city's personnel files. They must still establish that disclosure of these applications would invade the personal privacy of the employees involved.
In Board of Education v. Freedom of Information Commission, 210 Conn. 590, 596 (1989), the court approved the use of a test for determining whether disclosure of a personnel record would constitute an invasion of privacy by balancing the particular employee's right of privacy against the public's interest in obtaining the information contained in the document involved. This approach, was short-lived, however, because it was abandoned when the court next addressed the issue in Chairman v. Freedom of Information Commission, 217 Conn. 193, 200-202 (1991). The court concluded that such a test, which the federal courts had developed in construing the parallel exemption in 5 U.S.C. § 552 (b)(6) for "personnel . . . files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," (emphasis added), was incompatible with the language of 1-19 (b)(2), which requires only an invasion of privacy to be proved, not that it also be "clearly unwarranted."
The commission concluded that "for a reasonable man, disclosure of individual job qualifications as presented on the job applications that were examined in camera is not in itself embarrassing because (a) it is widely accepted that formal training is not the only source of skill development and that education occurs on the job; (b) the job applications set forth an applicant's qualifications in the must positive light; and (c) the function of the application is to persuade an employer to hire or promote an applicant." The plaintiffs had argued that disclosure of the applications, even as redacted, would be an invasion of CT Page 10759 privacy because the complainants intended to use the information obtained therefrom for the purpose of publishing an article in Northeast Magazine concerning a public works scandal in Hartford and because the resulting publicity, possibly relating to the qualifications of particular employees, would be embarrassing. The commission ordered that a criminal conviction of one employee for a minor offense nearly twenty years ago should be redacted, because its disclosure would be an invasion of privacy. For the same reason it concluded that the birth certificate, social security card, and report of separation from military service of each employee were exempt from the disclosure requirement. With the consent of the complainants, the commission also ordered redaction of the home addresses of the employees who objected to disclosure, the duration of their residence at such addresses, their telephone numbers, and salary information. The remaining information in the application forms, to which the order of disclosure would be applicable, consisted for each objecting employee of his name, date of birth, education and other training, previous employment record, including his reasons for leaving, and special skills, such as professional licenses, facility in foreign languages, or typing ability. Implicitly, the commission concluded that, for none of the employees involved, whose applications were examined in camera, would disclosure of such information constitute an invasion of privacy.
 II
At the hearing several employees who had objected to the release of information contained in their job applications testified about the reasons for their objections. One employee testified that he was concerned that the information in his application might be used by some impostor to obtain a credit card issued in the employee's name, which the impostor might use fraudulently. He claimed to have had such an experience with respect to a credit card issued in his name to an impostor that had caused him a great deal of aggravation. His testimony did not explain how the disclosure of any information contained in his CT Page 10760 application would be used to facilitate issuance of a credit card in his name to an impostor. (T. 53-58).
A second employee testified that he was concerned that disclosure of his previous work history as stated in his application would result in contact with some of his previous employers with whom he did not get along, and that his work experience with those employers was irrelevant to his present position. He did not object to contact with former employers for whom he had worked as a carpenter, the job for which he claimed to be qualified, but he did object to contact with those employers for whom he had performed work unrelated to carpentry. (T. 58-61).
A third employee testified that he was a licensed electro-mechanical technician and had received the highest mark of all the candidates for the job, which involved heating, air conditioning and refrigeration. He objected to release of information concerning his previous employers because "those [jobs] were in a private sector." (T. 61-63).
A fourth employee, who worked as a plumber for the city, objected to the release of his application because he "was always under the assumption that it was private and personal and it was just between [him] and [his] employer." (T. 63-64).
A fifth employee, an electrician, objected to disclosure of his application because he feared it would be misinterpreted and he would "held up in a bad light in the newspaper." He had been told that his application was confidential. In response to an inquiry as to whether he would object if the newspaper article mentioned him favorably, he responded that, although he would not be displeased, he did not want to take a chance on what would appear in the newspaper. This employee was allowed to testify that another employee had objected to release of his job application on the ground that he did not want his name to appear in the newspaper in connection with the investigation of the city public works department, which was apparently the intended subject of the article to be published. (T. 64-68). CT Page 10761
A sixth employee was allowed to testify to the content of a statement made by another employee who had objected to disclosure. That employee had stated that he was hired as an electro-mechanical technician, although he held no such license, because there was an opening for that position. The job announcement, however, indicated that the department wanted someone qualified to perform clerical duties, such as a senior account clerk or a senior clerk typist. That employee was qualified for such work, which he had been doing for the city since he was hired. He was presently working for the city as a worksite monitor at a lesser salary than he had earned in his previous classification, but the work was still clerical in nature. (T. 70-74).
A seventh employee, who had been hired in 1978 as a semi-skilled worker in the public works department, testified that he was presently an assistant building maintenance supervisor. He objected to disclosure of his job application forms on the ground that he had understood that "everything in [the] personnel records [was] confidential" and that "there's strict security in them." He was concerned about what might appear in the newspaper article about him, because his job applications did not adequately describe his on-the-job experience, on the basis of which he was qualified for his present position. He held no licenses, although his duties required him to supervise some tradesmen who had licenses, such as electricians and plumbers. He was concerned that an outsider would "misinterpret" his qualifications on the basis of his application, would not look at the "whole picture" and would select bits of information that would cast him in a bad light. (T. 74-78).
The last employee to testify had been a building maintenance section leader, but had resigned from his employment by the city three months before the FOIA hearing. He held a journeyman's license as an electro-mechanical technician for burners and as a steamfitter. He had been arrested in connection with the public works department scandal and had been charged with larceny. As a result of his arrest, he CT Page 10762 had been a subject of the publicity generated by the reports in the news media concerning the scandal. At that time he had experienced insomnia, anxiety, and other physical symptoms as well as humiliation with respect to his family and acquaintances. He feared that disclosure of his job applications would result in reviving those symptoms and experiences because of the likelihood of additional unfavorable publicity. (T. 78-86).
 III
In Champion, the court established two criteria for determining whether an invasion of privacy may result from disclosure of a personnel record: (1) "the potential for embarrassment" of the employee that would result from the disclosure; and (2) "whether the individual originally gave the information to the government agency with the reasonable expectation that the material would be considered private." Id., 198.
 A.
With respect to the magnitude of the "potential" for employee embarrassment or invasion of privacy, the Champion opinion quotes approvingly from Baez v. United States Department of Justice, 647 F.2d 1328, 1339 (D.C. Cir. 1980): "We [hold] that government officials have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in their official or private lives." In Baez, however, the "government officials" referred to were F.B.I. agents whose names were contained in certain investigative reports to be released pursuant to the federal counterpart of the FOIA and who feared reprisals by those who were the subjects of the reports. The Baez court concluded that the trier could properly find "that disclosure of the names of individual agents could subject these agents to personal harassment or discomfort." Furthermore, in Hartford v. Freedom of Information Commission,201 Conn. 421, 434 (1986), our supreme court rejected allegations "in broad, conclusory terms that the records were exempt from disclosure because they related to investigations that might lead to CT Page 10763 discipline, suspension or termination of the [employees] involved." (Emphasis in original). See Wilson v. Freedom of Information Commission, 181 Conn. 324,341 (1980).
The plaintiffs claim that the FOIC applied the wrong standard in finding that, "for a reasonable man, disclosure of individual job qualifications as presented on the job applications that were examined in camera, is not in itself embarrassing . . . ." They maintain that the issue is not whether the objecting employees would actually suffer embarrassment or other harm from disclosure of the redacted applications, but whether they could conceivably suffer such injury. (P/B p. 22). They cite the concerns upon which testimony was presented: that one employee might be perceived as having accepted a demotion; that qualifications stated in the job applications might be misunderstood; that possibly some information could be used for fraudulent purposes; and that a former employee who was involved in the public works scandal would suffer additional embarrassment from the publicity likely to result from the article contemplated by the complainants after his case had been disposed of in the criminal justice system.
If the mere possibility of embarrassment of a government employee from disclosure of his personnel records were sufficient to constitute an invasion of privacy, virtually all such records would be exempt from disclosure unless the employee consented. No person can predict with absolute certainty how information disclosed may be utilized, especially when the acknowledged purpose of the complainants' request is the publication of a newspaper article relating to the investigation of a scandal. The possibility of embarrassment, therefore, cannot be wholly excluded for any employee whose application is disclosed, however innocuous the information contained therein may appear.
Our supreme court has not regarded the mere possibility that disclosure "might lead to discipline, suspension or termination of the [employees] involved" (emphasis in original) as a sufficient basis for finding an invasion of privacy. Hartford v. Freedom of CT Page 10764 Information Commission, supra 434. Although the cases heretofore decided have not articulated a precise standard for that determination, its contours would seem to require an assessment of the magnitude of the harm to the individual involved likely to result from the disclosure and a determination of whether the risk of such harm is unreasonable. In concluding that a "reasonable man" would not be "embarrassed" by the information ordered to be disclosed, the commission apparently adopted from the law of negligence the familiar reasonable person test in determining the magnitude of "embarrassment," without considering the special sensibilities of the employees involved. The commission's approach attempts to use an objective test rather than one that would depend wholly on the attitude of each employee toward disclosure: whether a reasonable man in the situation of the particular employee involved, would be embarrassed by disclosure of such employee's job application as redacted. This test is compatible with the analyses of the cases in this state and in the federal courts discussing the invasion of privacy exemption, none of which have required that the possibility of embarrassment be absolutely excluded.
In Core v. U.S. Postal Service, 730 F.2d 946 (4th Cir. — 1984), the court upheld a request under the parallel federal statute for disclosure of the job applications of successful applicants for postal service positions, reasoning that "[t]heir identity is known. The disclosure that they wish to leave their former employment cannot embarrass them, for this part is known to their former employers. The information they furnished is not derogatory. It is simply the type of information every applicant seeks to bring to the attention of a prospective employer. In short, disclosure of information submitted by five successful applicants would cause but a slight infringement of their privacy." Id., 948.
The FOIA, like other administrative agencies, is endowed with a broad discretion in determining the credibility and in evaluating the testimony of witnesses. At the hearing, several of the city employees objecting to disclosure testified that they CT Page 10765 had been humiliated by the newspaper articles that had appeared concerning the public works department scandal, even though their names had not been mentioned in those articles. The commission might reasonably have inferred that the concerns they expressed were largely motivated by the earlier experience of these employees with newspaper publicity that had cast the public works department and some of their fellow workers in a bad light. Such a fear could hardly constitute a basis for finding an invasion of privacy.
Similarly, the worry expressed by several employees that contact by the complainants with their former employers might result in derogatory statements reflecting on their qualifications cannot be deemed to establish an invasion of privacy as a matter of law. When those employees furnished the information relating to their prior employment as requested in the job application forms that they had completed, they must have anticipated that the city might contact the employers listed for the purpose of discussing the qualifications of the applicants. They assumed the risk that the city would use the information in the application to learn as much as possible about their qualifications.
The possibility that the former employee, who testified that he had experienced great humiliation resulting in physical symptoms after his arrest, which grew out of the scandal, would again suffer embarrassment did not require the commission to conclude that the risk of an invasion of privacy resulting from the disclosure ordered was unreasonable. It is probable that this former employee will be mentioned in any newspaper article about the public works scandal even if his job application were never disclosed. The commission, as the trier of fact, may well have decided that the possibility that information gleaned from his job application would be used to cause additional embarrassment to this former employee was too remote to support a finding of invasion of privacy.
The court has concluded that the evidence produced by the plaintiffs at the hearing concerning the possibilities of embarrassment from the disclosure CT Page 10766 ordered was not so overwhelmingly persuasive that the commission was compelled to find as a matter of law an unreasonable risk of the kind of harm that the invasion of privacy exemption was intended to prevent.
 B.
With respect to the remaining factor to be considered in determining whether disclosure of a personnel record would result in an invasion of privacy, "whether the individual originally gave the information to the government agency with the reasonable expectation that the material would be considered private;" Champion v. Freedom of Information Commission, supra, 198; the commission has found that "the [plaintiffs] believed that the applications would be confidential." It concluded, nevertheless, that the employees' expectations of privacy were "not reasonable." The reasons given for this conclusion were that "for many years this Commission has treated such applications as public records subject to disclosure," and that "in FIC 91-95, Robert McCloud v. City of Hartford, Director of Personnel, the city did not claim any exemption . . . for job applications similar to those now claimed exempt." The commission's reliance on these grounds indicates that it accepted the uncontroverted testimony of several employees that they had been told that the information contained in their job applications would be confidential and also of the assistant personnel director of the city that the "common practice" was to so inform applicants for employment by the city.
The court is not persuaded by the commission's reasoning that the employees objecting to disclosure had no reasonable expectation of privacy, despite the assurances of confidentiality given to them by the city, simply because of the failure of the city to claim an exemption for job applications in a previous case. General Statutes 1-20a(c) provides that, when disclosure of personnel records may involve an invasion of privacy, the employees who may be affected must be notified and given an opportunity to object, any such objection to be ruled upon by the FOIC. Implicitly the statute recognizes that government employees have a CT Page 10767 substantial interest in protecting their own privacy. It would distort the statutory purpose to hold that these objecting employees are estopped from asserting their rights because of any conduct that might bar the city, even if its failure to claim an exemption in cases involving a different employee might constitute a waiver on its part.
With respect to the commission's reliance on its own precedent in having ordered disclosure of job applications in other cases, it is not self-evident that, even if the information involved and the assurances of confidentiality in these cases were similar, these objecting employees had any knowledge of those decisions or any other reason to question the representations of confidentiality made by the city. If a subjective expectation of privacy based upon a reasonable assessment of the facts and circumstances known to each employee were a determinative criterion for concluding that disclosure would constitute an invasion of privacy, the court would be compelled to reach that conclusion in this case because of the unchallenged evidence that the city promised to keep the job applications from public view.
The unique posture of this case, however, is that the court has concluded in Part III A. that the commission did not exceed its discretion as trier of the fact in deciding that the information to be disclosed concerning each employee would not have caused embarrassment on the part of a reasonable person in the same situation. The issue is whether that conclusion becomes of no consequence in the ultimate outcome of this appeal because of the employees' subjectively reasonable reliance on the city's representations of confidentiality, even if those representations were ill-advised. To hold that erroneous representations of confidentiality by the city bars disclosure otherwise proper would make the city rather than the commission the arbiter of what items in a personnel file are subject to disclosure. The FOIA contains no provisions regulating the representations that a government agency may make concerning confidentiality. Conceivably such an agency might declare all of its personnel records to be CT Page 10768 confidential, even when the information sought could not possibly involve privacy. To circumvent this fox-guarding-the-hen-house scenario, the court concludes that the commission cannot be barred from ordering disclosure of information that it has otherwise properly found not to constitute an invasion of privacy simply because of the erroneous determination by a government agency that such information should be confidential and its representations to that effect.
The commission's reference to its previous decisions treating job applications as public records subject to disclosure may have been an invocation of the basic principle that everyone is presumed to know the law and to act accordingly, despite the unreality of that presumption. A violation of the law cannot be excused because the offender has relied upon erroneous legal advice. The concept of a reasonable expectation of privacy in the context of the FOIA must take into account the familiar rule that ignorance of the law is no excuse for noncompliance with it. If the commission's determination that the nature of the information ordered to be disclosed would not result in an invasion of the privacy of any objecting employee must be sustained, as concluded in Part III A., the city's erroneous representations cannot be permitted to thwart the ramifications of that determination.
Accordingly, it is ordered that judgment enter dismissing the plaintiffs appeal.
David M. Shea State Trial Referee