DEPARTMENT OF PUBLIC SAFETY, DIVISION OF
STATE POLICE *v.* FREEDOM OF INFORMATION
COMMISSION ET AL.
(SC 15601)
(SC 15602)

Borden, Berdon, Palmer, McDonald and Peters, Js.

Argued May 28—officially released July 22, 1997

*Eliot D. Prescott,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Sharon M. Hartley,* assistant attorney general, for the appellant in Docket No. 15601, appellee in Docket No. 15602 (plaintiff).

*Victor R. Perpetua,* appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee in Docket No. 15601, appellant in Docket No. 15602 (named defendant).

*Opinion*

PETERS, J. General Statutes § 1-19 (b) (2),[1] which is part of the Freedom of Information Act,[2] exempts from public disclosure "personnel or medical files and similar

[1] General Statutes § 1-19 provides in relevant part: "Access to public records. Exempt records. . . . (b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

[2] General Statutes § 1-7 et seq.

files the disclosure of which would constitute an invasion of personal privacy . . . ." The issue presented in these consolidated appeals is the extent to which this exemption provides protection from public disclosure for police internal affairs investigation reports that exonerate police officers from citizen complaints of misconduct.

In the first case, Docket No. 15601, the plaintiff, the department of public safety (department), appealed to the trial court challenging the validity of an order of the named defendant, the freedom of information commission (commission), requiring the department to disclose an internal affairs investigation report (report) concerning a state trooper. In that case, the report examined and found unsubstantiated a citizen's claim of assault and use of excessive force by the trooper. Kirk Bennett,[3] who was counsel for the citizen lodging the complaint, sought disclosure of the contents of the report. Despite timely objection to disclosure by the trooper and the department and despite the trooper's testimony that disclosure of the report would impair his ability to work in the community, the commission ordered that the contents of the report be made available to Bennett. The commission agreed with the department and with the trooper that the report was a "personnel . . . or similar file," but found that they had failed to prove that disclosure of the contents of the report would be an invasion of the trooper's privacy.

In the second case, Docket No. 15602, the department appealed to the trial court challenging the validity of a commission order requiring the department to disclose a report concerning a second state trooper. In that case, the report examined and found unsubstantiated a citizen's claim that the second trooper had engaged in an inappropriate relationship with the wife of the com-

---

[3] Bennett was also named as a defendant in this appeal.

plainant, Hendrik E. Maas.[4] Maas subsequently sought disclosure of this report. In this case as well, the commission ordered disclosure, despite the timely objection by the trooper and the department, because the commission found that, although the report was a "personnel . . . or similar file," neither the trooper nor the department had proven an invasion of the trooper's privacy.

After consolidation of the two appeals, the trial court dismissed the department's appeal with respect to the report concerning alleged use of excessive force, but sustained its appeal with respect to the report concerning alleged personal misconduct. The court agreed with the parties that the reports qualified as "personnel . . . or similar files" but, in each case, undertook an independent determination of the applicability of the exemption for "an invasion of personal privacy." In substantial part, the court made its findings on the privacy issues on the basis of an in camera inspection of the contents of the two reports.

The department has appealed from the trial court's judgment, in the first case, upholding disclosure; the commission has appealed from the trial court's judgment, in the second case, precluding disclosure. Each appealed to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgments of the trial court.

The appeals require us to address three questions. First, what is the standard of judicial review, given the procedural posture of these appeals? Second, what is the standard for determining a claim of exemption for "invasion of personal privacy" under § 1-19 (b) (2)? Third, how is this standard to be applied to investigative reports that exonerate state troopers?

---

[4] Maas was also named as a defendant in this appeal.

I

The commission urges us to uphold the administrative rulings requiring the disclosure of both reports, and thus to reverse the judgment in the second case, because, under General Statutes § 4-183 (j) (5), a reviewing court cannot "substitute its judgment for that of the [administrative] agency as to the weight of the evidence on questions of fact" unless the court finds, inter alia, that the administrative findings of fact are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record" before the administrative agency. In both of these cases, the commission found, as a matter of fact, that the department and the troopers had failed to sustain their evidentiary burdens of proving that disclosure of the respective reports would constitute "an invasion of personal privacy," as § 1-19 (b) (2) requires.

Although the principle on which the commission relies is frequently controlling; see *Kureczka* v. *Freedom of Information Commission*, 228 Conn. 271, 278, 636 A.2d 777 (1994); *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164–65, 635 A.2d 783 (1993); *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992); it does not apply in these cases. It is undisputed that the trial court, with the permission of the parties and at the insistence of counsel for the *commission*, undertook an in camera review of the contents of the reports at issue and admitted these reports, under seal, into evidence. General Statutes § 1-21i (d)[5] expressly autho-

---

[5] General Statutes § 1-21i (d) provides in relevant part: "Notwithstanding the provisions of section 4-183, in any such appeal of a decision of the commission [pursuant to § 4-183], the court may conduct an in camera review of the original or a certified copy of the records which are at issue in the appeal but were not included in the record of the commission's proceedings, admit the records into evidence and order the records to be sealed or inspected on such terms as the court deems fair and appropriate, during the appeal. . . ."

rizes the procedure followed by the trial court. Because the evidentiary records that were the bases for the commission's decisions differed substantially from the evidentiary records before the trial court, the court was free to make its own findings about whether the troopers or the department had met their burdens of proof. Our review of the trial court's findings, similarly, is informed not only by the administrative record, but also by the contents of each of the investigative reports.

## II

The standard that determines whether a claim of exemption qualifies as "an invasion of personal privacy" under § 1-19 (b) (2) is the test set forth in *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 175. It is common ground that a person seeking exemption from disclosure under § 1-19 (b) (2) has the burden of proving, in the language of the statute, both that the document at issue is a " 'personnel, medical or similar file' " and that its disclosure would constitute " 'an invasion of personal privacy.' " Id., 168 and cases cited therein. Throughout these proceedings, the parties have agreed that, to satisfy the burden of proof with respect to "an invasion of personal privacy," a person must prove, as *Perkins* held, that "the information sought by a request does not pertain to legitimate matters of public concern *and* is highly offensive to a reasonable person." (Emphasis added.) Id., 175. Concededly, this standard is easier to state than to apply, but it has been accepted as the touchstone for subsequent cases addressing this element of § 1-19 (b) (2). See *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 43, 657 A.2d 630 (1995); *Kureczka* v. *Freedom of Information Commission*, supra, 228 Conn. 277.

It bears emphasis that the *Perkins* standard imposes two separate burdens on a person seeking to prove the

right to an exemption on the ground of "an invasion of personal privacy." Recognizing the interests of the public, *Perkins* limits the exemption to cases in which the person resisting disclosure proves that the challenged information does not relate to "legitimate matters of public concern . . . ." *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 175. Recognizing the interests of the individual, *Perkins* further limits the exemption to cases in which the person resisting disclosure proves that the challenged information would be "highly offensive," not to him or her subjectively, but to a reasonable person. Id.; see *Kureczka* v. *Freedom of Information Commission,* supra, 228 Conn. 279. A party seeking to invoke the exemption under § 1-19 (b) (2) must meet each of these burdens of proof independently. The *Perkins* standard "does not signal a return to the invocation of a balancing test, which we explicitly rejected in *Chairman* v. *Freedom of Information Commission,* [217 Conn. 193, 200–201, 585 A.2d 96 (1991)]." *Perkins* v. *Freedom of Information Commission,* supra, 175.

### III

Application of the *Perkins* standard to the facts of these appeals requires us to consider both the subject matter of the reports that are here at issue and the specific information contained in each report. Both of these cases concern reports that, in response to a citizen complaint, investigated the basis for that complaint and found the complaint to be unsubstantiated. In light of all the facts of record, the trial court concluded that disclosure of the investigation report exonerating the trooper in the first case from a charge of use of excessive force would not constitute "an invasion of personal privacy," but that disclosure of the investigation report exonerating the trooper in the second case from a charge of personal misconduct would constitute "an invasion of personal privacy." We agree.

The commission argues that reports of investigations into citizen complaints of police misconduct are *always* a matter of legitimate public concern and, therefore, are *never* "an invasion of personal privacy." The department argues, to the contrary, that such reports, if they exonerate the police officer, are *never* a matter of legitimate public concern provided that there is no evidence of a pattern of similar citizen complaints. The trial court did not explicitly address these divergent views, but looked to the nature of the charges and the contents of the investigative report in order to make a fact-specific determination of what constitutes a legitimate public concern.

This court only once has addressed the possible exemption from disclosure of police department investigations of citizen complaints of police misconduct. In *Hartford v. Freedom of Information Commission,* 201 Conn. 421, 435, 518 A.2d 49 (1986), we held that, in the absence of other persuasive evidence, the commission is entitled to presume that "the public has a legitimate interest in the integrity of . . . police departments and in disclosure of how such departments investigate and evaluate citizen complaints of police misconduct." *Hartford* is not controlling, however, because in that case no evidence whatsoever was adduced in support of the plaintiffs' claim for an exemption under § 1-19 (b) (2). "At the initial hearing before the commission, the plaintiffs alleged in broad, conclusory terms that the records were exempt from disclosure because they related to investigations that *might* lead to discipline, suspension or termination of the police officers involved. At no time did the plaintiffs attempt to describe even generally the contents of the specific records in question."[6] (Emphasis in original.) Id., 434.

---

[6] Although, in the present cases, the commission found that the testimony of both troopers expressed only generalized concerns, the trial court had before it, in addition to this testimony, copies of the reports themselves. See part I of this opinion.

In these appeals, the department relies on the testimony that it presented at the commission hearings to support its position that, when citizen complaints of misconduct have not been sustained, there is *never* a legitimate public concern in disclosure of the investigatory reports that come to this conclusion. Gerald Gore, an assistant advisor at the department, testified, in each case, that, in the absence of some overriding security concern, the department normally does *not* object to disclosure of investigatory reports in which the complaint against the police officer was sustained. Gore testified, however, that if the report exonerates the officer, the department views the indiscriminate release of such a personnel investigation as inimical to the integrity of the state police, because its disclosure improperly would dignify and encourage unwarranted claims and needlessly would invade the privacy of police officers.

The commission maintains, as it held at the administrative level, that the public interest in investigative reports is as legitimate in reports that reject the validity of citizen complaints as it is in reports that sustain such complaints. In view of the presumption in favor of disclosure of all such reports that was articulated in *Hartford*, the commission urges us to uphold its finding that the department's evidence was insufficient to overcome the presumption. More broadly, the commission asks us to confirm the legitimacy of the public interest in the integrity of any and all investigative proceedings concerning the conduct of state employees, regardless of their outcome.

The trial court impliedly held that the disclosure of exculpatory investigative reports should be decided, not categorically, but on a case-by-case basis. As we had suggested in *Hartford*, the trial court determined that it would decide whether these reports should be disclosed by referring to "the contents of the specific

records in question." *Hartford* v. *Freedom of Information Commission*, supra, 201 Conn. 434. The court recognized that, because of the public interest in the fairness of police investigations, there is a general presumption in favor of disclosure, even for investigative reports that exonerate police officers from the charges that have been brought against them. The court went on, however, to consider the charges and the investigative information contained in each report. In light of the circumstances therein documented, the court decided that the report in the first case should be disclosed while the report in the second case should not. We agree with the methodology adopted by the trial court. While the legislature has determined "that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern [that] presumption is not . . . conclusive." *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 174.

The trial court determined that there was a legitimate public concern in the official response to a citizen's complaint of a police assault and use of excessive force. The complaint in the first case charged a state trooper with physical abuse of power while engaged in the performance of his official police duties. The nature of that charge, combined with the fact that the information contained in the report was limited to matters of professional conduct,[7] persuaded the court that the presumption in favor of disclosure had not been overcome.

[7] Although the nature of the charge of police misconduct in the first case makes it highly likely that disclosure of the investigatory report would be required, we can conceive of circumstances in which the contents of the report would warrant a different determination. It is possible, for example, that the trial court might find that disclosure of the contents of the report would interfere with other ongoing investigations involving this trooper or would hamper the trooper in the future performance of his or her duties. Although the trooper in the first case testified that disclosure would impede his future performance, the trial court implicitly agreed with the commission's explicit finding that it would not.

In challenging the validity of this finding, the department reverts to its position that any report that exonerates a trooper from charges of misconduct is not a legitimate matter for public concern. Notably, it does not contest the accuracy of the trial court's characterization of the charge and of the information at issue, a characterization that our reading of the report confirms. Like the trial court, we are persuaded that the fact of exoneration is not presumptively sufficient to overcome the public's legitimate concern for the fairness of the investigation leading to that exoneration. This legitimate public concern outweighs the department's undocumented assertion that any disclosure of investigative proceedings may lead to a proliferation of spurious claims of misconduct.[8]

The trial court came to a different conclusion in the second case, which involved the investigation of a citizen complaint that the trooper was involved in an inappropriate relationship with the complainant's wife. The complaint in that case did not focus on the conduct of the trooper's official business, and the investigative report documented intimate relationships between various parties, including observations about the trooper's marriage and friendships.[9] The trial court found that the public had no legitimate interest in disclosure of a report describing the details of the trooper's personal and marital relationships.

In this second case, it is the commission that urges us to come to a contrary conclusion. Without taking

[8] Furthermore, although it is not necessary for us to reach this issue, we also agree with the trial court that the information contained in the report cannot properly be characterized as "highly offensive to a reasonable person . . . ." As we observed in *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 177, "when a person accepts public employment, he or she becomes a servant of and accountable to the public. As a result, that person's reasonable expectation of privacy is diminished . . . ."

[9] Although this report concluded that the complaint was "not sustained," it criticized the trooper's judgment. The commission makes no meaningful claim, however, that this criticism bears on the outcome of this appeal.

issue with the trial court's characterization of the specific contents of the complaint and the report, the commission argues that, because a state trooper is a public official, every aspect of a trooper's personal life is always a matter of legitimate public concern as long as it is contained within a report that is the product of an investigatory process. We reject that argument.[10] So broad a contention would preclude any public official, under any circumstance, from ever invoking the exemption contained in § 1-19 (b) (2). We decline to extend the already strenuous standard described in *Perkins* that far. Taking into account the entirety of the record before it, the trial court reasonably concluded that the contents of the report were not of legitimate public interest.

A finding that the contents of a report are not of legitimate public interest is not, however, sufficient to sustain a claim of exemption on the grounds of "an invasion of personal privacy" under § 1-19 (b) (2). Pursuant to *Perkins*, even materials in the personnel or similar files of public employees that are *not* of legitimate public interest must be disclosed unless the materials at issue are also found to contain information that is "highly offensive" to a reasonable person. *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 172–73. The trial court, having examined the investigative report, found that the department had proven that its contents fit within the category of private

---

[10] The commission's reliance on *Moriarty* v. *Lippe*, 162 Conn. 371, 294 A.2d 326 (1972), is misplaced. We recognized in that case that "a patrolman's office, if abused, has great potential for social harm and thus invites independent interest in the qualifications and performance of the person who holds the position." Id., 378. This statement from *Moriarty*, however, arose in the context of a discussion on *libel* law and, therefore, was intended to address legal issues that are distinct from the ones here presented. The very quotation that the commission calls to our attention, moreover, speaks of the public interest in abuse of a police office. It does not address the public interest in the absence of proof of such abuse.

facts about personal relationships that qualify for the statutory exemption. Despite the commission's contention to the contrary, our examination of the report leads us to concur in the trial court's factual finding.

The commission argues, finally, that even if we uphold the trial court's findings in the second case, those findings did not authorize the trial court to render a judgment sustaining the department's appeal. Conceding, arguendo, that the report contains information that is "highly offensive," the commission maintains that the report could be redacted to excise the offensive material and that a remand to the commission for that purpose was the only appropriate remedial judgment for the trial court to have rendered. We are not persuaded, however, that the commission ever clearly articulated this argument in the trial court. The commission briefly adverted to redaction when, in answer to the claim of invasion of privacy, it observed that the commission's order permitted the department to delete the names, addresses and telephone numbers of those who had been interviewed. Later in the proceedings, when the court was considering whether to examine the contents of the reports, the commission argued that a remand would unnecessarily protract the resolution of the disagreements between the parties. If any request for a remand was ever formally presented to the trial court, the commission has failed to point us to a ruling on such a request. We, therefore, decline to consider the merits of the commission's contention. See Practice Book § 4061 (appellate court "not . . . bound to consider a claim unless it was distinctly raised at the trial"); see also *Skrzypiec* v. *Noonan*, 228 Conn. 1, 13, 633 A.2d 716 (1993) (same).

The judgments are affirmed.

In this opinion BORDEN, BERDON and PALMER, Js., concurred.

MCDONALD, J., concurring and dissenting. In the first case, the majority affirms the trial court's judgment upholding an order requiring disclosure of an internal affairs investigation report exonerating a state trooper of police brutality. First, the request for the release of this report was made by an attorney who represents an individual who filed the complaint. There is no evidence of a pattern of such complaints that might require public disclosure in the public interest. Rather, here an attorney is seeking material for a future lawsuit against the trooper.

Second, I also believe that, in these circumstances, the release of the report would "hamper the trooper in the future performance of his . . . duties." See footnote 7 of the majority opinion. The publication of unfounded charges of such a betrayal of public trust would affect the trooper's ability to gain public support and respect in carrying out his duties. The cooperation engendered by such respect would be unjustifiably undermined. This would be highly offensive to the reasonable law enforcement officer and an invasion of the trooper's personal privacy. The report, in my opinion, should not be disclosed.

The second case concerns a complaint filed against a state trooper alleging that he engaged in an affair with the complainant's wife. In an internal affairs investigation report, the trooper was criticized for exercising poor judgment. The complaint, however, was "not sustained."

As in the first case, the complainant is seeking disclosure of the report. This case, however, presents a more compelling instance of public concern regarding the trooper's poor judgment, a factor in continued law enforcement duties. On the other hand, because of the observations in the report, perhaps needless, concern-

ing the trooper's marriage and friendships, I agree with the majority and the trial court that the report need not be released.