# DIRECTOR, RETIREMENT AND BENEFITS SERVICES DIVISION, OFFICE OF THE COMPTROLLER *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (SC 16462)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued March 16—officially released July 17, 2001

*Laurie Adler*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellant (plaintiff).

*Victor R. Perpetua*, appellate attorney, with whom, on the brief, was *Mitchell W. Pearlman*, general counsel, for the appellee (named defendant).

*Opinion*

NORCOTT, J. The issue before this court is whether the trial court properly determined that the disclosure of the home addresses of five state employees would not constitute an invasion of privacy and, therefore, that the information was not exempt from disclosure under General Statutes § 1-210 (b) (2)[1] of the Freedom of Information Act (act). This appeal arose from a decision of the named defendant, the freedom of information commission (commission), ordering the plaintiff, the director of retirement and benefit services division, office of the comptroller, to disclose the home addresses of certain employees of the state department of banking (department), to the defendant, Eric Youngquist. The plaintiff appealed to the trial court pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-183 (a),[2] and the act, General Statutes § 1-206 (d),[3] formerly § 1-21i (d). The trial court affirmed

[1] General Statutes § 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) Personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."

[2] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[3] General Statutes § 1-206 (d), formerly § 1-21i (d), provides: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. Notwithstanding the provisions of section 4-183, in any such appeal of a decision of the commission, the court may conduct an in camera review of the original or a certified copy of the records which are at issue in the appeal but were not included

the commission's decision ordering the disclosure of the addresses. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The following facts are relevant to our disposition of this appeal. Youngquist had been the subject of an investigation conducted by the department that resulted in the revocation of his registration as an agent engaged in the sale of securities.[4] In March, 1996, Youngquist submitted a request under the act that the plaintiff disclose the home addresses of thirty-eight employees of the department. Prior to this request, Youngquist had requested the disclosure of the home addresses of seventy-three employees of the department, including eigh-

---

in the record of the commission's proceedings, admit the records into evidence and order the records to be sealed or inspected on such terms as the court deems fair and appropriate, during the appeal. The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. Notwithstanding the provisions of section 3-125, legal counsel employed or retained by said commission shall represent said commission in all such appeals and in any other litigation affecting said commission. Notwithstanding the provisions of subsection (c) of section 4-183 and section 52-64, all process shall be served upon said commission at its office. Any appeal taken pursuant to this section shall be privileged in respect to its assignment for trial over all other actions except writs of habeas corpus and actions brought by or on behalf of the state, including informations on the relation of private individuals. Nothing in this section shall deprive any party of any rights he may have had at common law prior to January 1, 1958. If the court finds that any appeal taken pursuant to this section or section 4-183 is frivolous or taken solely for the purpose of delay, it shall order the party responsible therefor to pay to the party injured by such frivolous or dilatory appeal costs or attorney's fees of not more than one thousand dollars. Such order shall be in addition to any other remedy or disciplinary action required or permitted by statute or by rules of court."

[4] Youngquist subsequently was arrested on charges relating to that investigation.

teen of the thirty-eight addresses regarding which Youngquist presently was seeking disclosure. The plaintiff denied Youngquist's request, informing him that the home addresses he requested were identical to those previously requested by him in a pending Superior Court case; *Youngquist* v. *Freedom of Information Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 950554601 (October 29, 1996) (18 Conn. L. Rptr. 2); and that a stay of the commission's decision ordering disclosure had been granted pending Youngquist's appeal in that case.[5] The letter further stated that the request was denied on this ground. Youngquist appealed from the plaintiff's denial of his request to the commission.

Pursuant to General Statutes § 1-214 (b) and (c),[6] the department distributed notices to the thirty-eight employees subject to Youngquist's disclosure request, advising them that their home addresses had been requested and that they could file written objections to

[5] The trial court noted the factual and procedural background surrounding Youngquist's first request as follows: "On August 2, 1994, Youngquist made a freedom of information request to the [department] seeking the names and home addresses of all present employees of the department as well as former employees of the department employed between December 1, 1991 and August 4, 1994. That request was denied by the department and Youngquist thereafter filed an appeal to the [commission]. In a final decision issued August 23, 1995, the [commission] ordered disclosure of the names of one hundred employees who had not objected to such disclosure, but denied access to the other seventy-three employees who had either objected to such disclosure or had taken significant steps to protect their addresses from the public domain. Youngquist then filed an appeal to the Superior Court."

[6] General Statutes § 1-214, formerly § 1-20a, provides in relevant part: "(b) Whenever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned . . . .

"(c) A public agency which has provided notice under subsection (b) of this section shall disclose the records requested unless it receives a written objection from the employee concerned . . . ."

their disclosure. The notice informed the employees that in order to claim exemption of their addresses, they would have to demonstrate that they had taken significant efforts to keep their addresses private. Subsequently, the department received eleven objections to the disclosure of employees' addresses. The Administrative and Residual Employees Union, which represented all thirty-eight employees, also objected. Three employees did not object to disclosure of their addresses and those addresses were provided to Youngquist by the plaintiff.

Because certain employees were contesting the disclosure request, hearings were conducted before a commission hearing officer. The plaintiff argued that the addresses of these employees were exempt from disclosure pursuant to § 1-210 (b) (2). Specifically, the plaintiff relied on *West Hartford* v. *Freedom of Information Commission*, 218 Conn. 256, 265, 588 A.2d 1368 (1991), which held that addresses of public employees who had taken significant steps to keep these addresses private could be found exempt from disclosure pursuant to § 1-210 (b) (2). At the hearing, it was established that five employees not only had objected to the disclosure of their addresses, but had taken significant steps to keep their addresses private. These efforts included the exclusion of each employee's telephone number and address from telephone directories. Specifically, one employee testified that she refused all junk mail and responded to such mail by requesting that her name be removed from all mailing lists. Another employee used a post office box as his address, kept his name off mailing lists, and took other security measures as a result of his concern for his personal safety and that of his family. Two employees testified that they had substantial security concerns regarding their addresses based on previous incidents involving their families.[7]

---

[7] It should be noted that these prior incidents did not involve Youngquist.

Another employee testified that, because he was the lead investigator in the investigation that had resulted in Youngquist's registration being revoked and subsequent arrest, he had some fear of retaliation.

The commission held that the requested home addresses were not exempt pursuant to § 1-210 (b) (2), and ordered the plaintiff to disclose the requested home addresses of the department employees, excluding those addresses that the plaintiff already had provided to Youngquist. The decision relied largely on the ruling of the court, *McWeeny, J.*, in the appeal concerning Youngquist's first request, which had ordered the release of the addresses in question and had concluded that employees do not have a privacy interest in their home addresses under § 1-210 (b) (2) even if they have taken steps to keep their addresses private.[8] The commission also ordered the plaintiff to " 'strictly comply' " with the provisions of the act in the future.

The plaintiff appealed from the commission's decision to the trial court.[9] The trial court, *Hartmere, J.*,

---

[8] The trial court, *McWeeny, J.*, had sustained Youngquist's appeal regarding his first request, and remanded the case to the commission for further proceedings, directing the commission to order the department to release the names and addresses of the seventy-three persons previously exempted from its order. See *Youngquist* v. *Freedom of Information Commission*, supra, 18 Conn. L. Rptr. 2. The court subsequently reaffirmed its decision. See *Youngquist* v. *Freedom of Information Commission*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 950554601 (February 18, 1997) (19 Conn. L. Rptr. 23). Thereafter, the commission issued an order of disclosure consistent with the court's memorandum of decision.

[9] Initially, the commission moved to dismiss the appeal, claiming that because the information requested in this case already had been disclosed by the commission based on Youngquist's successful appeal before Judge McWeeny, this appeal was moot. The plaintiff argued that, because the commission's current order mandating disclosure was prospective in nature, the appeal was not moot. The motion to dismiss subsequently was withdrawn by the commission. We conclude that, although the addresses of the employees sought in this case already have been disclosed, the appeal is not moot. We previously have held that where orders issued by the commission are prospective in nature, an appeal of a commission order is not moot. *Gifford* v. *Freedom of Information Commission*, 227 Conn. 641, 648–49, 631 A.2d

dismissed the appeal, concluding that all of the addresses requested were required to be disclosed pursuant to the § 1-210 (b) (2). Applying the test set forth in *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 175, 635 A.2d 783 (1993), the trial court held that state employees' addresses are a matter of legitimate public concern because the public is "legitimately interested in ascertaining" the addresses, town, and street where state employees reside. The court also held that it would not be highly offensive to a reasonable person to disclose the addresses of the five employees who had taken significant steps to keep their addresses private. The court stated " 'as the majority of persons freely disclose their addresses, the disclosure of an address is not generally highly offensive to a reasonable person.' " The court reasoned that allowing an exemption for the five employees would be to rely on " 'their purely subjective desires' " for privacy.

This appeal followed. The issue before this court is whether the trial court properly determined that the disclosure of the addresses of the five state employees would not constitute an invasion of privacy and, therefore, that the information was not exempt from disclosure under § 1-210 (b) (2). We conclude that disclosure in this case would constitute an invasion of privacy and that the information was exempt from disclosure.

I

Before addressing this issue, we briefly set forth the applicable standard of judicial review. Ordinarily, "[o]ur resolution of this [appeal] is guided by the limited scope of judicial review afforded by the Uniform Administra-

252 (1993); see also *Chief of Police* v. *Freedom of Information Commission*, 252 Conn. 377, 384, 746 A.2d 1264 (2000). In the present case, the commission order stated: "Henceforth [the director] shall strictly comply with the provisions of [General Statutes §§ 1-212 (a) and 1-210 (a)] . . . ." Thus, because the order was prospective in nature, the appeal by the plaintiff is not moot.

tive Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992). . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 774, 535 A.2d 1297 (1988). Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980)." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 164–65.

A reviewing court, however, is not required to defer to an improper application of the law. *Board of Education* v. *Freedom of Information Commission*, 217 Conn. 153, 159, 585 A.2d 82 (1991); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care*, 200 Conn. 133, 140, 509 A.2d 1050 (1986). It is the function of the courts to expound and apply governing principles of law. *National Labor Relations Board* v. *Brown*, 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care*, supra, 140. We previously have recognized that "the construction and

interpretation of a statute is a question of law for the courts, where the administrative decision is not entitled to special deference . . . ." (Internal quotation marks omitted.) *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 718, 546 A.2d 830 (1988); *New Haven* v. *Freedom of Information Commission*, supra, 205 Conn. 773–74; *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services*, 202 Conn. 583, 599, 522 A.2d 771 (1987); *Schlumberger Technology Corp.* v. *Dubno*, 202 Conn. 412, 423, 521 A.2d 569 (1987). Questions of law "[invoke] a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 718; *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 5, 434 A.2d 293 (1980). Because this case forces us to examine a question of law, namely, the construction and interpretation of § 1-210 (b) (2) as well as the standard to be applied, our review is de novo.

II

With these legal principles in mind, we next examine the applicable statute in this case. Section 1-210 (a) provides in relevant part that "[e]xcept as otherwise provided by any federal law or state statute [including the exceptions to the act], all records maintained or kept on file by any public agency . . . shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212. . . ."[10] "[I]t must be noted initially that there is an overarching policy

[10] General Statutes § 1-212, formerly § 1-15, provides in relevant part: "(a) Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ."

underlying the [act] favoring the disclosure of public records." (Internal quotation marks omitted.) *Superintendent of Police* v. *Freedom of Information Commission*, 222 Conn. 621, 626, 609 A.2d 998 (1992). "[I]t is well established that the general rule under the [act] is disclosure, and any exception to that rule will be narrowly construed in light of the general policy of openness expressed in the . . . legislation [comprising the act]." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission*, supra, 221 Conn. 398. "The burden of establishing the applicability of an exemption clearly rests upon the party claiming the exemption." (Internal quotation marks omitted.) *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 167. "This burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." *New Haven* v. *Freedom of Information Commission*, supra, 205 Conn. 776; see also *Rocque* v. *Freedom of Information Commission*, 255 Conn. 651, 660–61, 774 A.2d 957 (2001).

Section 1-210 (b) provides in relevant part that "[n]othing in the Freedom of Information Act shall be construed to require disclosure of . . . (2) [p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ." The person claiming exemption based upon § 1-210 (b) (2) "must meet a twofold burden of proof. First, the person claiming the exemption must establish that the files are personnel, medical or similar files." *Rocque* v. *Freedom of Information Commission*, supra, 255 Conn. 661. In the present case, there is no dispute that Youngquist sought disclosure of personnel or similar files. "Second, the person claiming the exemption under § 1-210 (b) (2) must also prove that disclosure of the

files would constitute an invasion of personal privacy." Id.; *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 169; *Superintendent of Police* v. *Freedom of Information Commission,* supra, 222 Conn. 626.

Our analysis of what constitutes an invasion of privacy is controlled by *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 175. In *Perkins,* we enunciated the standard for determining whether a disclosure constitutes an invasion of personal privacy under § 1-210 (b) (2). We held that "the invasion of personal privacy exception of [§ 1-210 (b) (2)] precludes disclosure . . . only when [1] the information sought by a request does not pertain to legitimate matters of public concern and [2] is highly offensive to a reasonable person."[11] Id.; see also *Rocque* v. *Freedom of Information Commission,* supra, 255 Conn. 661; *Dept. of Public Safety* v. *Freedom of Information Commission,* 242 Conn. 79, 84–85, 698 A.2d 803 (1997). "Concededly, this standard is easier to state than to apply, but it has been accepted as the touchstone for subsequent cases addressing this element of § [1-210] (b) (2). See *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission,* 233 Conn. 28, 43, 657 A.2d 630 (1995); *Kureczka* v. *Freedom of Information Commission,* [228 Conn. 271, 277, 636 A.2d 777 (1994)]." *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 84. "A party seeking to invoke the exemption under § [1-210] (b) (2) must meet each of these burdens of proof independently. The *Perkins* standard 'does not signal a return to the invocation of a balancing test, which we explicitly rejected in *Chairman* v. *Freedom of Information Commission,* [217

---

[11] In *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 174–75, this court adopted, as the appropriate test for invasion of personal privacy under § 1-210 (b) (2), the definition of a tort action for invasion of personal privacy as delineated in § 652D of the Restatement (Second) of Torts (1977).

Conn. 193, 200–201, 585 A.2d 96 (1991)].' *Perkins* v. *Freedom of Information Commission*, supra, 175." *Dept. of Public Safety* v. *Freedom of Information Commission*, supra, 85.

Although the two-prong standard in *Perkins* establishes the test to be applied to determine whether an invasion of privacy under the act exists, the trial court decision in the present case and both party's briefs spend considerable time debating whether the standard set forth under *Perkins* controls our analysis, or whether our decision in *West Hartford* v. *Freedom of Information Commission*, supra, 218 Conn. 264–65, which held that the addresses of public employees who had taken significant steps to keep these addresses private could be found exempt from disclosure pursuant to § 1-210 (b) (2), is the applicable rule of law in this case.

The plaintiff claims that he should prevail under either standard. The commission argues that the trial court properly concluded that the language in *West Hartford* discussing the significant efforts that a person may take to keep information private was dicta. In the alternative, the commission argues that our decision in *Perkins* overruled our holding in *West Hartford*.

We first clarify any confusion by reaffirming that we adhere to the two-prong standard set forth in *Perkins* when determining what constitutes an invasion of privacy. We note, however, that although the *Perkins* standard controls our determinations of cases involving privacy exemptions under the act, our decision in *West Hartford* addressing the "significant steps" a person may take to maintain privacy was not merely dicta. The trial court's conclusion of law to the contrary, therefore, was improper. Our courts repeatedly have looked to the decision in *West Hartford* for guidance on how to address requests for disclosure of home addresses and

other private information. See *Glastonbury Education Assn.* v. *Freedom of Information Commission,* 234 Conn. 704, 725, 663 A.2d 349 (1995) (*Borden, J.,* concurring and dissenting); *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 174; *Chairman, Board of Education* v. *Freedom of Information Commission,* 60 Conn. App. 584, 591, 760 A.2d 534 (2000); *O'Connell* v. *Freedom of Information Commission,* 54 Conn. App. 373, 379 n.9, 735 A.2d 373 (1999). The analysis employed in *West Hartford* is relevant to the claim that significant efforts taken by a public employee to keep certain information private bears on the court's determination of whether the information constitutes a legitimate matter of public concern and is highly offensive to a reasonable person. Under the present facts, we conclude that the plaintiff has satisfied his burden of demonstrating that such disclosure constitutes an invasion of privacy.

A

First, we address whether the material that is claimed to be exempt from disclosure is of legitimate public concern. Given the efforts that these employees took to keep their information private, the plaintiff argues that the information requested is not a legitimate matter of public concern because no public interest is served by exposing aspects of their private lives that do not impact the public. At oral argument before this court, the commission withdrew the request for the street addresses of the five employees, noting that neither Youngquist nor the commission had a legitimate public interest in this particular information. The commission, however, formally modified its position at oral argument to request disclosure of the town and state where each of these five employees reside. The commission argues that there is a legitimate public interest in know-

ing whether state employees are state residents.[12] We agree with the plaintiff.

Although the "legislature has determined that disclosures relating to the employees of public agencies are presumptively legitimate matters of public concern [that] presumption is not . . . conclusive." *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 242 Conn. 88, quoting *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 174. We previously have held that where a public official's private life does not concern or implicate his job as a public official, such information is not a legitimate matter of public concern. *Rocque* v. *Freedom of Information Commission,* supra, 255 Conn. 663–64; *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 87–90. In *Dept. of Public Safety,* we ordered disclosure of an investigatory report concerning on-duty conduct, but did not order another report disclosed because it "did not focus on the conduct of [an employee's] official business . . . ." *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 89. The protected report concerned a citizen's claim that a state trooper had engaged in an inappropriate relationship with the wife of the complainant. Id. In the present case, these five employees' choice of residence, including the specific town and state in which they are located, are not legitimate matters of public concern because the information does not concern or implicate their jobs as public officials.

Further, in determining whether the information is a legitimate public concern, we have examined what steps an individual has taken to maintain certain infor-

[12] At oral argument before this court, the commission posited that the public could have a legitimate public interest in determining whether unfair hiring practices exist. The commission argued that revealing whether all or none of the employees reside in one town could help prove this and, therefore, a legitimate public interest exists for disclosure.

mation private, especially giving deference to information that is unrelated to a person's public life. See *West Hartford* v. *Freedom of Information Commission*, supra, 218 Conn. 265 (ordering commission to hold new evidentiary hearing to allow municipal retirees whose addresses had been requested to present evidence of their "significant efforts" to keep addresses private). Most recently, in *Rocque* v. *Freedom of Information Commission*, supra, 255 Conn. 664–65, we held that the identity and home address of the complainant in a sexual harassment investigation at issue was exempt from disclosure under the act. In holding that the information requested was not a legitimate matter of public concern, we noted that the complainant consistently had requested the information be kept confidential, primarily for fear of retaliation or other security concerns. Id.

Also, in *Chairman, Board of Education* v. *Freedom of Information Commission*, supra, 60 Conn. App. 591, the Appellate Court ordered a remand to the commission to permit a public employee with a privacy claim "no less of an opportunity to prove that the disclosure of [the requested information] would constitute an invasion of her privacy." In *O'Connell* v. *Freedom of Information Commission*, supra, 54 Conn. App. 379, the Appellate Court rejected the claim that the home addresses of members of volunteer fire departments were exempt from disclosure pursuant to § 1-210 (b) (2). The court reasoned that the addresses in dispute were not protected because "[n]othing in the record indicates that the plaintiffs have taken serious efforts to insulate their addresses from the public domain." Id., 379 n.9.

The holdings in these cases recognize that public employees are properly subject to increased scrutiny regarding matters that affect their job performance as a result of the public nature of their employment. No

public interest is served, however, by exposing aspects of their private lives that do not impact the public, particularly where the employee has taken significant steps to keep nonpublic information private.

In the present case, unlike the other employees, these five employees took significant steps to keep their addresses private. The various steps these employees took included: (1) excluding their telephone numbers and home addresses from telephone directories; (2) requesting that their names be removed from all mailing lists; (3) using a post office box as the address for all public correspondence; and (4) requesting that their names be removed from mailing lists when solicitations came via mail. Moreover, many of these employees sought to keep their addresses private for security reasons and concern of retaliation.

The trial court, therefore, in ruling that a state employee does not have a protected privacy interest in his residential address, improperly took an overly broad, categorical approach in its examination of all the addresses requested. The *Perkins* test requires that a determination be made regarding each request for information. *Dept. of Public Safety* v. *Freedom of Information Commission,* supra, 242 Conn. 87 (approved method of trial court, which held that disclosure of multiple investigatory reports "should be decided, not categorically, but on a case-by-case basis").

The commission contends that the plaintiff cannot establish that the home addresses of the employees here do not pertain to a legitimate matter of public concern. The basis of this contention is that such addresses might be necessary to demonstrate that improper hiring practices are occurring, namely, that an undue number or proportion of employees live in a particular area, suggesting favoritism, or, to the contrary, that no employees come from a different area,

suggesting a negative bias. The commission conceded at oral argument before this court, however, that there is nothing in the record to suggest such improper hiring practices. As the commission also conceded, moreover, employing such a test for the establishment of a lack of legitimate public concern would be analogous to the rational basis test for the constitutionality of a statute, namely, that the statute passes muster if the court can conceive of a rational basis for it. See, e.g., *Ramos* v. *Vernon*, 254 Conn. 799, 829, 761 A.2d 705 (2000). Thus, under this analogy, a matter *is or would be* of legitimate public concern if there is any rationally conceivable basis for it that would be of such concern. We disagree with this analogy and, therefore, with the contention that it supports.

First, we implicitly rejected it in *Dept. of Public Safety* v. *Freedom of Information Commission*, supra, 242 Conn. 79. In that case, we held that the report involving "the investigation of a citizen complaint that [a state] trooper was involved in an inappropriate relationship with the complainant's wife"; id., 89; was not of legitimate public concern because it "did not focus on the conduct of the trooper's official business . . . ." Id. Applying a rational basis to such a report, however, probably would have led to a different result, because it is rational to conceive that a state trooper's private but inappropriate conduct with another man's wife might serve as the basis of a claim that the trooper was prone to abusing his position.

Second, there is nothing in the language or purpose of the act to suggest such a test. The rational basis test is premised on the traditional deference of the judicial branch to the legislature in appropriate legal contexts. It may be viewed, therefore, as arising out of the separation of powers. There is no basis to transport that doctrine into the realm of judicial interpretation of the act.

## B

In order to establish an exemption under § 1-210 (b) (2), however, the party claiming the exemption must also demonstrate that the disclosure of the documents in question would be "highly offensive to a reasonable person." *Perkins* v. *Freedom of Information Commission*, supra, 228 Conn. 175. The plaintiff argues that the trial court improperly applied the *Perkins* standard when it concluded that the plaintiff's concerns were purely subjective. The plaintiff, therefore, argues that it would be highly offensive to a reasonable person who had taken significant steps to protect this information to be required now to disclose such information. The commission argues that although disclosure in this case may be offensive to these five employees, it is not highly offensive to a reasonable person. The commission, therefore, argues that the trial court properly applied the *Perkins* test when it concluded that the department employees' privacy concerns were purely subjective and that because " 'the majority of persons freely disclose their addresses, the disclosure of an address is not generally highly offensive to a reasonable person.' " We again agree with the plaintiff.

We recognize that requiring disclosure of the information requested in this case by employees who have made no effort to protect it would not be highly offensive to a reasonable person. The standard that is applied, however, is different for employees who took significant and repeated steps to maintain the privacy of their addresses. In this case, the standard under *Perkins* is whether it is highly offensive to require disclosure of the addresses of employees who take significant measures to protect private information from being disclosed. This test does not rely on the five employees' subjective desires for privacy as enunciated by the trial court, but, rather, more precisely, establishes a test that makes an objective assessment of the public availability

of the information based on the employee's specific efforts to maintain privacy. See *West Hartford* v. *Freedom of Information Commission,* supra, 218 Conn. 264–65 (court will take into account those "persons who, through significant efforts, have made a conscious attempt to insulate their addresses from the public domain"); *O'Connell* v. *Freedom of Information Commission,* supra, 54 Conn. App. 379; see generally *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 174–75.

Here, the employees obtained unlisted telephone numbers, removed their names from mailing lists and used post office boxes. These measures were taken largely in response to security concerns regarding the release of their addresses. We cannot conclude that a reasonably objective person, after taking such protective measures, would consider disclosure at this juncture a "minor" or a "moderate" annoyance. *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 173, quoting comment (c) of § 652D of the Restatement (Second) of Torts ("minor and moderate annoyance . . . is not sufficient to give [a plaintiff] a cause of action under the rule stated in this Section" [internal quotation marks omitted]). Under these circumstances, we conclude that it is highly offensive to a reasonably objective person to disclose this information after taking significant steps to keep it private.[13]

We conclude, therefore, that the plaintiff has satisfied his burden under § 1-210 (b) (2) and the twofold test

[13] We acknowledge that we have not applied *Perkins* strictly in accordance with the "reasonable person" standard that we adopted in that case. *Perkins* v. *Freedom of Information Commission,* supra, 228 Conn. 175. Rather, we have applied a standard that includes both a subjective and an objective component. We were not asked to revisit *Perkins* in the present case. Thus, we have applied *Perkins* to the facts of this case as we deemed most appropriate. A review of *Perkins* and its progeny in a suitable case awaits another day.

under *Perkins,* that the information in the record is not a legitimate public interest and that the disclosure of the information would be highly offensive to a reasonable person. Consequently, the addresses, and information on the town and state where each of these five state employees resides are exempt from public disclosure under § 1-210 (b) (2).

The judgment is reversed and the case is remanded to the trial court with direction to sustain the plaintiff's appeal.

In this opinion BORDEN, PALMER and VERTEFEU-ILLE, Js., concurred.

ZARELLA, J., concurring. I concur in the result reached by the majority. Nevertheless, I write separately to express my view that this case demonstrates the need to revisit and reconsider the standard for determining when an invasion of privacy occurs for purposes of General Statutes § 1-210 (b) (2). The existing standard is set forth in *Perkins* v. *Freedom of Information Commission,* 228 Conn. 158, 635 A.2d 783 (1993), in which this court stated that "the invasion of personal privacy exception of [General Statutes (Rev. to 1993)] § 1-19 (b) (2) [now codified at General Statutes § 1-213 (b) (2)] precludes disclosure . . . only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." Id., 175. Thus, under *Perkins,* we adopted an objective tort standard in defining invasion of privacy. The second prong of this standard is not concerned with whether the individual official or employee is highly offended by the disclosure, but, rather, whether a *reasonable* person in similar circumstances would be highly offended.

In *West Hartford* v. *Freedom of Information Commission,* 218 Conn. 256, 588 A.2d 1368 (1991), this court opined that the home addresses of retired town employ-

ees were proper subjects for disclosure under the Freedom of Information Act unless the town employees "through significant [effort], ha[d] made a conscious attempt to insulate their addresses from the public domain." Id., 264. The court in *West Hartford* considered "a person's reasonable expectation of privacy and the potential for embarrassment as significant factors in determining if disclosure [of public records] would constitute an invasion of privacy." (Internal quotation marks omitted.) Id., 263. Thus, in determining whether the disclosure would amount to an invasion of privacy under § 1-19 (b) (2), the court applied a hybrid (subjective and objective) standard that considers: (1) whether the employee subjectively has demonstrated an expectation of privacy; and (2) whether that expectation of privacy is objectively reasonable. This is in contrast to the purely objective standard of whether a *reasonable person* would be highly offended by the disclosure as set forth in *Perkins*.

In the present case, the majority states that "[t]he analysis employed in *West Hartford* is relevant to the claim that significant efforts taken by a public employee to keep certain information private bears on the court's determination of whether the information constitutes a legitimate matter of public concern and is highly offensive to a reasonable person." In an effort to reconcile the hybrid standard employed in *West Hartford* with the objective standard of *Perkins*, the majority states: "We recognize that requiring disclosure of the information requested in this case by employees who have made no effort to protect it would not be highly offensive to a reasonable person. The standard that is applied, however, is different for employees who took significant and repeated steps to maintain the privacy of their addresses. In this case, the standard under *Perkins* is whether it is highly offensive to require disclosure of the addresses of employees who take significant mea-

sures to protect private information from being disclosed. This test does not rely on the five employees' subjective desires for privacy as enunciated by the trial court, but, rather, more precisely, establishes a test that makes an objective assessment of the public availability of the information based on the employee's specific efforts to maintain privacy."

There was no evidence in the record, however, to suggest that the five employees who had taken such steps did so because of any different objective concerns for security than those of the employees who had not taken steps. Rather than consider whether a reasonable person would have found the disclosure of the information highly offensive, the majority relies on the subjective concerns of the employees who took steps to keep the information private.

The majority correctly notes that none of the parties has asked this court to reconsider the precedent established in *Perkins*. Thus, this court is under no obligation to do so. Rather than wait for "another day" as the majority suggests, however; footnote 13 of the majority opinion; I would have requested briefs and argument on whether *Perkins* should be overruled and, if so, what standard should apply. Failing that course, however, I join in the court's implied invitation to reconsider *Perkins* in a future case.