[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiffs, the State of Connecticut Department of Transportation and its personnel administrator (hereinafter "the department"), appeal from the decision of the Freedom of Information Commission ("the commission") ordering the disclosure of an investigative summary of a sexual harassment complaint made by a department employee. The court sustains the appeal in part.
BACKGROUND
This case began with a March 15, 2000 letter to the department from William Stone, a department employee, requesting disclosure under the Freedom of Information Act, General Statutes § 1-200 et seq. ("FOIA"), of his personnel file, numerous documents apparently relating to his March 14, 2000 suspension from work, and information concerning department investigations of employee misconduct. (Return of Record ("ROR"), pp. 1, 3-4, 125-126.) The department provided or offered to provide some items, requested clarification concerning others, and claimed to be unaware of the existence of the remainder. (ROR, pp. 126-127 ¶¶ 4-5.)
Stone then filed a request for assistance with the commission, which the commission construed as an appeal under FOIA. (ROR, pp. 1, 126 ¶ 6.) A hearing officer held a formal administrative hearing on the complaint on June 22, 2000. (ROR, pp. 19-56.) On December 19, 2000, the commission released a "proposed final decision" in which the hearing officer found that the only item still in issue was a two page summary of a sexual harassment investigation. (ROR, pp. 57, 61 ¶ 9, 62 ¶ 16.). The hearing officer found that the summary: "contains the identity of the individual alleging sexual harassment in a sexual harassment complaint, and the related investigative material, including the details of the alleged harassment and the findings and impressions of the Affirmative Action Division. The complainant [Stone] is not an individual mentioned in the summary." (ROR, p. 62 ¶ 16.) The hearing officer concluded that the summary was exempt from disclosure under General Statutes § 1-210(b)(2) because it constituted a "similar file the disclosure of which would constitute an invasion of personal privacy." (ROR, p. 62 ¶ 17.)[1]
The full commission considered the hearing officer's proposed decision at its April 11, 2001 meeting. The commission initially adopted the proposed decision as its final decision. (ROR, pp. 67; Supplemental ROR, CT Page 17217 p. 133). The commission then voted to reopen the case in view of the fact that the hearing officer had just that day suggested amendments to her proposed decision based on Rocque v. Freedom of Information Commission,255 Conn. 651, 774 A.2d 957 (2001), which had been officially released the preceding day. (ROR, pp. 67-68, 133.) Those amendments called for a complete reversal of the conclusion in the proposed decision. (ROR, p. 64.)
On April 12, 2001, the commission released an "amended proposed final decision" in which the hearing officer revised her description of the investigative summary to state that it "contains the findings of the Affirmative Action Division following an investigation of an allegation of sexual harassment. The summary details the alleged harassment and contains some answers of individuals who were interviewed." (ROR, pp. 90-91, 95 ¶ 16.) The hearing officer then found that the information contained in the summary pertains to legitimate matters of public concern and was not highly offensive to a reasonable person. The hearing officer concluded that disclosure of the summary would not constitute an invasion of privacy under § 1-210 (b)(2) as interpreted by Rocque and that therefore the department violated FOIA by not disclosing the summary. (ROR, pp. 95-96 ¶¶ 17-19.)
The department filed a brief in opposition to the amended proposed decision and presented oral argument at a special meeting of the full commission held on April 20, 2001 (ROR, pp. 97-123.) The commission unammously adopted the amended proposed final decision as its final decision. (ROR, pp. 121-29.) The department appeals from that decision.
DISCUSSION
 I
The department initially raises two procedural objections to the commission's decision. First, the department argues that the hearing officer could not amend her initial proposed decision without conducting an additional hearing. The department's failure to request such an additional hearing at the time, however, disentitles it from obtaining relief now. See Burnham v. Administrator, 184 Conn. 317, 323, 439 A.2d 1008
(1981). In any event, the department's argument is not valid on the merits. The department relies on General Statutes § 4-179 (c), which provides that "[e]xcept when authorized by law to render a final decision for an agency, a hearing officer shall, after a hearing, make a proposed decision." (Emphasis added.) This statute guarantees the department one hearing, which it had, but not two. There is no authority requiring a second hearing if the hearing officer seeks to amend her proposed decision. The department had an "opportunity to object to the amended CT Page 17218 proposed decision before the full commission and the department took full advantage of that opportunity.
The department's next objection relies on General Statutes § 4-181a
(b), which provides that "[o]n a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion." The department contends that there were no "changed conditions" that authorized the commission to reverse the decision it reached on April 11, 2001. The commission initially responds by claiming that its April 11 decision was not a "final decision" under this statute because it was not "personally delivered or mailed" as required by General Statutes § 4-180(c).[2]
The minutes of the April 11 commission meeting, which the department's counsel attended, reveal that the commissioners "unammously adopted the Hearing Officer's Report" and then "unanimously voted to reopen the matter." (Supplemental ROR, p. 133.) It thus appears that the commissioners rendered an oral decision, "personally delivered" it at the commission meeting, and then voted to open it. Such a decision, "orally stated on the record," is a final decision under § 4-180(c). SeeCommission on Human Rights Opportunities v. Windsor Hall Rest Home,232 Conn. 181, 188-89, 653 A.2d 181 (1995).
The commission, however, was fully justified in opening this decision. The commission had initially approved the original version of the proposed decision that called for exempting the investigative summary from disclosure. The commission had apparently not seen the amendments to the proposed decision, prepared the day of the commission hearing in view of the release of the Rocque decision the day before, which called for full disclosure — the opposite result. These late-breaking developments fully constituted a "showing of changed conditions" under § 4-181a
(b) that authorized the commission to modify' its original decision.
 II
This court's review of the merits of an agency's decision is governed by General Statutes § 4-183(j). That section provides that:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made CT Page 17219 upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Schallenkamp v.DelPonte, 229 Conn. 31, 40, 639 A.2d 1018 (1994).
Section 1-210(b)(2) provides that "[n]othing in the Freedom of Information Act shall be construed to require disclosure of. . . [p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy. . . ." When a claim for exemption is based upon § 1-210(b)(2), the person claiming the exemption must meet a twofold burden of proof See Rocque v. Freedom ofInformation Commission, supra, 255 Conn. 661. First, the person claiming the exemption must establish that the files are personnel, medical or similar files. In this case, there is no dispute of the commission's finding that Stone sought disclosure of "similar" files. (ROR, p. 95 ¶ 14.) Second, the person claiming the exemption under § 1-210(b)(2) must also prove that disclosure of the files would constitute an invasion of personal privacy.
In Perkins v. Freedom of Information Commission, 228 Conn. 158,635 A.2d 783 (1993), the court adopted a two part test, derived from the definition of the tort of invasion of privacy, for determining whether a disclosure constitutes an invasion of personal privacy under §1-210(b)(2). Perkins held that "the invasion of personal privacy exception of [§ 1-210(b)(2)] precludes disclosure. . . only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." Id., 175.Perkins explicitly rejected a balancing test and ruled that the information sought must satisfy both parts of the test to be exempt from disclosure. See Rocque v. Freedom of Information Commission, supra,255 Conn. 662.
Rocque applied these principles for the first time to a request for disclosure of records of a sexual harassment investigation of a state employee. Cf. Connecticut Alcohol Drug Abuse Commission v. Freedom ofInformation Commission, 233 Conn. 28, 657 A.2d 630 (1995) (addressing whether an investigative file of a sexual harassment complaint was a CT Page 17220 "personnel or . . . similar file" within § 1-210(b)(2)). The Rocque court observed that, in general, much of the information in such records is of legitimate public concern because it reveals a state agency's procedures in investigating sexual harassment complaints. Rocque v.Freedom of Information Commission, supra, 255 Conn. 665. The court nonetheless held that, under Perkins, there were two categories of exempt information. The first was "the complainant's identity and related personal information from which the complainant could be identified, for example, the complainant's home address." Id., 664. The second category of exempt information is "sexually explicit or descriptive information, such as allegations of sexual contact and sexual improprieties, and details of intimate personal relationships." Id., 665. The Rocque court held that both categories of information satisfied the twofold test established in Perkins because the information was "not of legitimate public concern and [its] disclosure would be highly offensive to a reasonable person." Rocque v. Freedom of Information Commission, supra,255 Conn. 667.
This court has examined the sealed two page investigative summary in camera in accordance with the practice described in Rocque. Id., 662. This examination reveals that the commission did not comply with Rocque's mandate to withhold disclosure of the harassment complainant's name. This error was one of law. See General Statutes § 4-183 (j)(4). Similarly, the commission should have exempted disclosure of the harassment complainant's work location and the names of her supervisor and co-workers. A review of the investigative summary establishes that this case involves several persons from the same work unit. It is clear to the court that the identity of the work location and the names of other persons involved constitutes "related personal information from which the complainant could be identified." Id., 664. (Supplemental ROR, Item 21 (under seal).)
The remainder of the document contains some instances of what might be described as inappropriate conversation or crude talk. (Supplemental ROR, Item 21, ¶¶ 4-6.) But the document does not contain "sexually explicit or descriptive information, such as allegations of sexual contact and sexual improprieties, and details of intimate personal relationships." Rocque v. Freedom Information Commission, supra,255 Conn. 665. Accordingly, under the narrow holding of Rocque, the entire statement should be disclosed except for the names and other identifying information mentioned above.
 III
The department argues that in Director, Retirement and BenefitsServices Division v. Freedom of Information Commission, 256 Conn. 764, CT Page 17221775 A.2d 981 (2001), released only three months after Rocque, the Supreme Court redefined the Perkins test. The court agrees with the department in theory, but finds that application of the revised test does not change the outcome of this case.
 A
The issue in Director was whether the disclosure of the home addresses of five state employees who had taken significant steps to keep their addresses private fell within the invasion of privacy exemption. After finding that there was no legitimate public interest in disclosure, the court addressed the question of whether the information was "highly offensive to a reasonable person." Id., 776-81. The court rejected the trial court's position that the Perkins test relied on the employees' subjective desire for privacy, and instead determined that the test requires an "objective assessment of the public availability of the information based on the employee's specific efforts to maintain privacy." Id., 781-82. The court concluded that "it is highly offensive to a reasonably objective person to disclose this information after taking significant steps to keep it private." Id., 782.
In a footnote, however, the court acknowledged that:
 we have not applied Perkins strictly in accordance with the "reasonable person" standard that we adopted in that case. Perkins v. Freedom of Information Commission, supra, 228 Conn. 175. Rather, we have applied a standard that includes both a subjective and an objective component. We were not asked to revisit Perkins in the present case. Thus, we have applied Perkins to the facts of this case as we deemed most appropriate. A review of Perkins and its progeny in a suitable case awaits another day.
Director, Retirement and Benefits Services Division v. Freedom ofInformation Commission, supra, 256 Conn. 782 n. 13.
In a concurring opinion, Justice Zarella maintained that, in Perkins, the court "adopted an objective tort standard in defining invasion of privacy." Director, Retirement and Benefits Services Division v. Freedomof Information Commission, supra, 256 Conn. 783 (Zarella, J., concurring). He observed that "[r]ather than consider whether a reasonable person would have found the disclosure of the information highly offensive, the majority relies on the subjective concerns of the employees who took steps to keep the information private." Id., 785. Justice Zarella would have "requested briefs and argument on whether CT Page 17222Perkins should be overruled and, if so, what standard should apply." Id.
This court agrees, for somewhat different reasons, that Rocque andDirector applied a different test than the one enunciated in Perkins. ThePerkins court stated that the invasion of privacy exemption precludes disclosure "only when the information sought by a request does not pertain to legitimate matters of public concern and is highly offensive to a reasonable person." (Emphasis added.) Perkins v. Freedom of InformationCommission, supra, 228 Conn. 175. Thus, the second part of the test inPerkins focused on whether the "information" in question was highly offensive to a reasonable person.
In Rocque, the Supreme Court signaled a change in focus from "information" to "disclosure."[3] The court restated the trial court's findings that "disclosing the identity of the sexual harassment complainant would be highly offensive to a reasonable person . . . and that "disclosure of the details of the alleged sexual harassment would be highly offensive to a reasonable person."(Emphasis added.) Rocque v.Freedom of Information Commission, supra, 255 Conn. 666-67. The court then stated that it agreed with both findings and concluded that thePerkins test was satisfied because, among other things, "disclosure [of the information] would be highly offensive to a reasonable person." (Emphasis added.) Id., 667.
The court continued taking this approach in Director. The court observed that, because of security concerns regarding the release of employees' home addresses, the employees in question had obtained unlisted telephone numbers, removed their names from mailing lists, and used post office boxes. Director, Retirement and Benefits ServicesDivision v. Freedom of Information Commission, supra, 256 Conn. 782. The court then concluded that, under these circumstances, "it is highly offensive to a reasonably objective person to disclose this information after taking significant steps to keep it private." (Emphasis added.) Id.
The difference between disclosure of the information and the information itself is of great consequence. The disclosure of the identity of a sexual harassment complainant or the home addresses of state employees inevitably exposes private facts to the outside world. That process may well be highly offensive to a reasonable person. But few would contend that the information itself, even if it is private, is offensive. There is nothing particularly offensive about a name or an address.
Because Rocque and Director are the latest pronouncements of the Supreme Court concerning the Perkins test, this court is required to CT Page 17223 apply that test in the way that the court in Rocque and Director has implicitly revised it. The court therefore must look to see whether "disclosure would be highly offensive to a reasonable person." Rocque v.Freedom of Information Commission, supra, 255 Conn. 667.
 B
The department argues that disclosure of the full investigative summary would be highly offensive to a reasonable person primarily because it would expose information provided to it by department employees under assurances of confidentiality from department managers. (ROR, p. 45)[4]
The court agrees that, in many circumstances, disclosure of confidential witness statements would prove highly offensive to a reasonable person since disclosure would violate the trust that employees place in their employer and that public servants place in their government.
On the other hand, "[n]o public agency can shield public records from disclosure merely by agreeing to keep such records confidential."Kureczka v. Freedom of Information Commission, supra, 228 Conn. 280. In this case, the court has already ordered the redaction of all names and identifying information from the public version of the investigative summary. Moreover, the summary does not quote individual witnesses or attribute statements to them. Rather, the summary relates their statements in a general way, with phrases such as "[t]here was testimony" or "[i]t was confirmed that," and synthesizes these statements into various factual findings and conclusions. (Supplemental ROR, Item 21 ¶¶ 4-6.) Under these circumstances, disclosure of the substance of the investigative summary is not offensive to a reasonable person.
In order to prevail, of course, the department would also have to establish that there is no legitimate public concern in the balance of the investigative summary. As stated above, the Rocque court found that the public has a legitimate concern in seeing how state agencies investigate allegations of sexual harassment. The investigative summary reveals the department to have conducted an investigation of considerable depth and to have supported its conclusions with numerous factual findings. The commission's finding that the summary pertains to legitimate matters of public concern is therefore a correct application of Rocque and a reasonable conclusion from the facts. Schallenkamp v.DelPonte, supra, 229 Conn. 40.
 CONCLUSION
The appeal is sustained in part. The commission's order is vacated to the extent that it permits disclosure of identifying information, in accordance with this opinion. In all other respects, however, the CT Page 17224 commission's order to disclose the investigative summary is affirmed.
The court has placed a copy of the investigative summary in the record under seal with the redactions it has ordered. The court has also kept an unedited copy of the investigative summary under seal for any appellate review.
 Carl J. Schuman Judge, Superior Court